## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ATopTech, Inc.,[1] | ) | Case No. 17-10111 (MFW) |
| | ) | |
| Debtor. | ) | Re: Docket Nos. 32 & _22⁹_ |
| | ) | |

**ORDER (I) AUTHORIZING AND APPROVING (A) BIDDING PROCEDURES, (B) BUYER PROTECTIONS FOR STALKING HORSE, (C) PROCEDURES RELATED TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) THE FORM AND MANNER OF NOTICE;(II) SCHEDULING THE BID DEADLINE AND AUCTION (III) AUTHORIZING AND APPROVING (A) THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS AND (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND (IV) GRANTING RELATED RELIEF**

Upon the motion ("**Motion**")[2] of the debtor and debtor in possession in the above-captioned case (the "**Debtor**" or the "**Seller**") pursuant to sections 105, 363, 365 and 503 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (as amended, the "**Bankruptcy Code**"), and rules 2002, 6004, 6006, 9006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (each a "**Bankruptcy Rule**," and collectively, the "**Bankruptcy Rules**"), for an order (the "**Bidding Procedures Order**") (I)(A) establishing bidding procedures ("**Bidding Procedures**") for the sale of all, or substantially all, of the debtor's assets (the "**Sale**"); (B) approving certain buyer protections pursuant to the terms of the Asset Purchase Agreement, dated as of April 18, 2017 by and between the Debtor and Jingyuan Han, for and on behalf of Purchaser (the "**Stalking Horse**"), including minimum overbids, a "Break-Up Fee" and the "Expense

---

[1] The last four digits of the Debtor's federal tax identification number are 1945. The Debtor's headquarters and mailing address is 2111 Tasman Drive, Santa Clara, CA 95054.

[2] Capitalized terms used but not defined herein have the meaning ascribed to them in the Bidding Procedures.

Reimbursement" (as those terms defined therein); (C) establishing procedures relating to the assumption and assignment of executory contracts and unexpired leases; (D) approving form and manner of the sale, cure and other notices; (E) scheduling an auction (the "**Auction**"), if one is required under the terms of the Bidding Procedures, and (F) scheduling a hearing (the "**Sale Hearing**") to consider (1) approval of the Sale free and clear of claims, liens and encumbrances and (2) approving the assumption and assignment of executory contracts and unexpired leases and (II) granting related relief (the "**Bidding Procedures Motion**")[3] and the Court having considered the Bidding Procedures, and the arguments of counsel made and the evidence adduced at the hearing held before this Court (the "**Bidding Procedures Hearing**"); and due and sufficient notice of the Bidding Procedures Hearing and the relief sought therein having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the Bidding Procedures requested in the Motion are in the best interests of the Debtor, its estate, its creditors and other parties in interest; and after due deliberation thereon and good and sufficient cause appearing therefor, it hereby is:

FOUND, CONCLUDED AND DETERMINED THAT:[4]

A.     This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory and legal

---

[3] The Motion also seeks approval of the Sale to the successful bidder, which will be approved by separate order.

[4] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

4847-3948-5510\6

predicates for the relief requested in the Motion are sections 105, 363, 365, 503 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9006, 9007 and 9014.

B.      The relief granted herein is in the best interests of the Debtor, its estate and creditors, and other parties in interest.

C.      The Debtor has articulated good and sufficient business reasons for the Court (1) to approve (i) the Bidding Procedures, including the Break-Up Fee and Expense Reimbursement; (ii) the procedures for the assumption and assignment of executory contracts in connection with the Sale the ("**Assumption and Assignment Procedures**") and (iii) the form and manner of notices for the Sale (the "**Sale Notice**"), the notice of cure costs necessary to assume and assign the designated executory contracts and unexpired leases (the "**Cure Notice**") and the notice informing counterparties to executory contracts and unexpired leases of assumption and assignment (the "**Designated Contract Notice**"); (2) to set the date for the Auction, the Sale Hearing and the other dates set forth herein; and (3) to grant the relief requested in the Motion as provided herein.

D.      Due, sufficient and adequate notice of the Bidding Procedures Hearing and the relief granted in this Order has been given in light of the circumstances and the nature of the relief requested, and no other or further notice thereof is required. The Debtor's notice of the Motion, as it pertains to the Bidding Procedures, was appropriate and reasonably calculated to provide all interested parties with timely and proper notice under Bankruptcy Rules 2002, 6004, 6006, 9006, 9007 and 9014, and no other or further notice of, or hearing on, this Bidding Procedures Order is required.

E.      The Debtor's proposed Sale Notice, Cure Notice and other notices contemplated hereunder with respect to the Sale, the Auction, the Assumption and Assignment

3

Procedures, and the Sale Hearing are appropriate and reasonably calculated to provide all interested parties with timely and proper notice thereof and no further notice of each is necessary or required.

F.      The Bidding Procedures, as attached as *Exhibit A* hereto and incorporated herein by reference as if fully set forth herein, and the Buyer Protections included therein, are fair, reasonable and appropriate, were negotiated in good faith by the Debtor and the Stalking Horse Bidder and represent the best method for maximizing the value of the Debtor's estate in connection with the Sale.

G.      The Buyer Protections, to the extent payable under the Stalking Horse Agreement, (i) shall be deemed an actual and necessary cost of preserving the Debtor's estate within the meaning of Bankruptcy Code section 503(b), (ii) are of substantial benefit to the Debtor's estate, (iii) are reasonable and appropriate, including in light of the size and nature of the transactions comprising the Stalking Horse Agreement, and the efforts that have been and will be made by the Stalking Horse, (iv) have been negotiated by the parties and their respective advisors at arm's-length and in good faith and (v) are necessary to ensure that the Stalking Horse Bidder will continue to pursue the proposed Sale.  The Buyer Protections are material inducements for, and a condition of, the Stalking Horse's entry into the Stalking Horse Agreement.  The Stalking Horse Bidder is unwilling to commit to purchase the assets under the terms of the Stalking Horse Agreement (the **"Assets"**) unless the Stalking Horse Bidder receives the Buyer Protections.

H.      The Assumption and Assignment Procedures are reasonable and appropriate.

4

**IT HEREBY IS ORDERED, ADJUDGED AND DECREED THAT:**

1.      Those portions of the Motion seeking approval of the Bidding Procedures are GRANTED as set forth herein.

2.      Any objection to the portions of the Motion seeking approval of the Bidding Procedures or any other relief granted in this Order, to the extent not resolved, ruled upon by the Court at the Bidding Procedures Hearing, waived or withdrawn, and all reservations of rights included therein, is hereby overruled and denied on the merits, as to the Bidding Procedures and relief granted in this Order.

**A.      Bidding Procedures**

3.      The Bidding Procedures attached hereto as *Exhibit A* are APPROVED. The Debtor is authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.  The failure specifically to include or reference any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such procedures, it being the intent of this Court that the Bidding Procedures be authorized and approved in their entirety.

**B.      The Bid Deadline**

4.      As further described in the Bidding Procedures, a Potential Bidder who desires to make a Bid for the Assets that satisfies the bidding requirements set forth in the Bidding Procedures shall deliver its Bid, so as to be received by no later than **May 5, 2017 at 2:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**") to the parties in paragraph 4(i) through 4(v) (collectively, the "**Notice Parties**"):

> (i)      **counsel to the Debtor:**
> Dorsey & Whitney LLP
> 51 West 52nd Street
> New York, New York 10019

5

Attention: Eric Lopez Schnabel and Janet Weiss
Telephone No:  (212) 415-9200

(ii)    **special counsel to the Debtor**:
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304
Attention: Robert P. Latta and Julia Reigel
Telephone No: (650) 320-4646 and (650) 320-4509; and

(iii)   **financial advisor to the Debtor**:
Cowen and Company, LLC
599 Lexington Ave.
New York, New York 10022
Attention:  Randy Lederman
Telephone No: (646) 562-1251

## C.    Notices of Sale, Bidding Procedures, Buyer Protections and the Sale Hearing

5.      The notices described below are hereby approved, and service or publication thereof (as applicable) as set forth below constitutes proper, timely, adequate and sufficient notice of the Sale, the Bidding Procedures, the Buyer Protections and the Sale Hearing, and no other or further notice shall be required.

6.      Within three (3) Business Days after the entry of this Order, or as soon thereafter as practicable (the "**Mailing Date**"), the Debtor (or its agents) shall serve the Stalking Horse Agreement in the form attached to the Motion, this Order and the Bidding Procedures by first-class mail, postage prepaid, or by email, where available, upon:

(a)    all entities known to have expressed a *bona fide* interest in a transaction with respect to the Assets within the past two years;

(b)    all entities known to have asserted any lien, claim or encumbrance in or upon any of the Assets;

(c)    all federal, state and local environmental, regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion;

(d)    the U.S. Trustee;

6

(e)     counsel to the proposed Stalking Horse;

(f)     the Internal Revenue Service;

(g)     the Securities and Exchange Commission;

(h)     the U.S. Attorney for the District of Delaware; and

(i)     all persons and entities that have filed a request for service of filings in this Bankruptcy Case pursuant to Bankruptcy Rule 2002.

7.     On the Mailing Date, or as soon thereafter as practicable, the Debtor (or its agents) shall serve by first-class mail, postage prepaid, the Sale Procedures Notice, substantially in the form attached hereto as *Exhibit B* (the "**Sale Procedures Notice**"), upon all other known creditors of the Debtor and all counterparties to the Debtor's executory contracts and unexpired leases, which Sale Procedures Notice shall reflect that any purchaser shall be bound by the Permanent Injunction and Disposition Order entered in *Synopsys, Inc. v. ATopTech, Inc.*, Case No. 13-cv-02965-MMC on December 19, 2016.

8.     The Debtor shall publish a notice, substantially in the form of the Sale Notice, on one occasion, in *The New York Times*, National Edition, on the Mailing Date or as soon as practicable thereafter. Such publication notice shall be deemed sufficient and proper notice of the Sale to any other interested parties whose identities are unknown to the Debtor.

9.     The Sale Hearing shall be held on **May 12, 2017 at 11:30 a.m. (prevailing Eastern Time),** before the Honorable Mary F. Walrath at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Courtroom 4, Wilmington, Delaware 19801.

10.     All objections to the Sale (a "**Sale Objection**") must be in writing and filed on and served so as to be received by **May 5, 2017 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**") with the Clerk of the Court, 824 Market St. N, 3rd Floor,

Wilmington, DE 19801.  In addition, any Sale Objection must be served on the Debtor, the

Notice Parties and the Stalking Horse Bidder so as to be received by the Sale Objection Deadline;

*provided however*, that any objections to the conduct of the Auction or selection of the

Successful Bid or Back-Up Bid (a "**Supplemental Objection**") shall be in writing, filed with the

Clerk of the Court, 824 Market St. N, 3rd Floor, Wilmington, DE 19801, together with proof of

service, and served so as to be received by the Notice Parties, Successful Bidder, and Backup

Bidder as identified at the Auction, on or before **May 10, 2017 at 12:00 p.m. (prevailing**

**Eastern time)**.

           11.     For purposes of this Bidding Procedures Order, notice to the Stalking

Horse Bidder must be provided to its counsel:

> Davis Wright Tremaine LLP
> 505 Montgomery Street, Suite 800
> San Francisco, California 94111
> Attention: Judy Deng
>             Harvey Schochet
> Telephone No: (415) 276-6560
>             (415) 276-6507

> Morris James
> 500 Delaware Avenue, Suite 1500
> Wilmington, DE 19801-1494
> Attention: Carl N. Kunz, III
> Telephone No: (302) 888-6811

           12.     Failure to file and serve a Sale Objection or Supplemental Objection as

provided herein shall be deemed to be consent to the Sale for purposes of section 363(f) of the

Bankruptcy Code.

           13.     The Sale Hearing may be continued to a later date by the Debtor by

sending notice to the Notice Parties prior to the Sale Hearing or by making an announcement at

the Sale Hearing.  No further notice of any such continuance will be required to be provided to

any party (including the Stalking Horse).

**D.      The Auction**

14.      The Debtor is authorized to conduct the Auction with respect to the Assets.

The Auction shall take place on **May 9, 2017 at 10:00 a.m. (prevailing Eastern Time)** at the

offices of Wilson Sonsini Goodrich & Rosati located at 1301 Avenue of the Americas, 40th

Floor New York, New York 10019, or such other place and time as the Debtor shall notify all

Qualified Bidders and each of their respective counsel and advisors, and the Stalking Horse.

15.      The Debtor is authorized, subject to the terms of this Order, to take actions

reasonably necessary, at the discretion of the Debtor, to conduct and implement the Auction.

16.      Only the Debtor, the Stalking Horse Bidder and any other Qualified

Bidder, in each case, along with their respective representatives and counsel, may attend the

Auction (such attendance to be in person) and only the Stalking Horse Bidder and such other

Qualified Bidder(s) will be entitled to make any Bids at the Auction; provided however, that any

other creditor may attend (but not participate in) the Auction if it provides the Debtor written

notice of its intention to attend the Auction at least two business days prior to the Auction.  Such

written notice must be sent to counsel for the Debtor via electronic mail to Eric Lopez Schnabel

(schnabel.eric@dorsey.com) and Janet M. Weiss (weiss.janet@dorsey.com).  The Debtor and its

advisors shall direct and preside over the Auction and the Auction shall be transcribed.

17.      The Stalking Horse Bidder (in its capacity as a Qualified Bidder) and each

other Qualified Bidder participating in the Auction must confirm that it has (a) not engaged in

any collusion with respect to the bidding or Sale of the Assets, (b) reviewed, understands and

accepts the Bidding Procedures, (c) consented to the core jurisdiction of the Court, and (d) has

9

4847-3948-5510\6

waived the right to a jury trial in connection with any disputes relating to the Auction, the interpretation of the Bidding Procedures and the selection of the Successful Bidder.

18.    Subject to the rights of parties in interest to (i) challenge the Sale, (ii) challenge the Debtor's decisions with respect to the Sale, or (iii) such other rights as such parties may have under applicable law, the Debtor may (a) determine, in its business judgment, pursuant to the Bidding Procedures, which Qualified Bid is the highest or otherwise best proposal for the Assets and which Qualified Bid is the next highest or otherwise best proposal for the Assets and (b) reject any bid that, in the Debtor's business judgment, is (x) inadequate or insufficient, (y) not in conformity with the requirements of the Bidding Procedures, the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules or (z) contrary to the best interests of the Debtor and its estate.

19.    Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bidding Procedures, the Stalking Horse Bidder shall be a Qualified Bidder.

## E.    The Stalking Horse Agreement and Buyer Protections

20.    Any obligations of the Debtor set forth in the Stalking Horse Agreement that are intended to be performed prior to entry of the Sale Order are hereby authorized.

21.    The Buyer Protections, to the extent payable under the Stalking Horse Agreement, are approved.

22.    Pursuant to sections 105, 363 and 503 of the Bankruptcy Code, the Debtor is hereby authorized to pay the Buyer Protections pursuant to and subject to the terms and conditions set forth in the Stalking Horse Agreement.

23.    Upon entry of this Order, the Break-Up Fee (and the Expense Reimbursement, subject to the procedures set forth in the Stalking Horse Agreement) shall

4847-3948-5510\6

constitute an allowed administrative expense of the Debtor with priority equal to administrative expenses as provided in section 503(b) of the Bankruptcy Code.

24.    In accordance with section 10.3 of the Stalking Horse Agreement, in the event that the Stalking Horse Agreement is terminated pursuant to Section 10.1(d)(i), then an amount in cash equal to $270,000 (the "**Break-Up Fee**") shall be payable by Seller to the Stalking Horse.  Seller shall pay the Break-Up Fee by wire transfer to an account designated by the Stalking Horse within five (5) Business Days after consummation of an Alternative Transaction.

25.    In accordance with section 10.4 of the Stalking Horse Agreement, in the event that the Stalking Horse Agreement is terminated pursuant to any of subsections 10.1(b) (other than where the Stalking Horse's action or failure to act was a principal cause of, or resulted in, the failure of the Transaction to be consummated), 10.1(d); 10.1(e)(i); 10.1(e)(v); 10.1(e)(vii); 10.1(e)(x) or 10.1(e)(xi), then the Stalking Horse shall be entitled to reimbursement of its actual out-of-pocket costs and expenses in connection with the Stalking Horse's due diligence investigation of Seller and the negotiation and execution of the Stalking Horse Agreement and the transactions contemplated hereby, in cash in an amount equal to such actual costs and expenses, subject to a cap of $180,000 (the "**Expense Reimbursement**").  Seller shall pay the Expense Reimbursement by wire transfer to an account designated by the Stalking Horse Bidder within five (5) Business Days after a termination of the Stalking Horse Agreement that gives rise to the Expense Reimbursement.

26.    It is critical to the process of maximizing the value, and arranging an orderly sale, of the Assets to proceed by selecting the Stalking Horse Bidder to enter into the Stalking Horse Agreement.  Without the Stalking Horse Bidder having committed considerable

time and expense in connection with the Sale of the Assets, the Debtor would potentially realize a lower price for such assets; and, therefore, the contributions of the Stalking Horse Bidder to the process have indisputably provided a substantial benefit to the Debtor and its estate and creditors.

27.     The Break-Up Fee and Expense Reimbursement, as applicable, shall be the stalking Horse's sole remedy for breach of the Stalking Horse Agreement by Seller, if such agreement is terminated under circumstances where the Stalking Horse Bidder is entitled to the Break-Up Fee and/or the Expense Reimbursement. Otherwise, the Stalking Horse Bidder shall not be entitled to any remedy for the breach of the Stalking Horse Agreement by Seller.

**F.      Contract Assumption and Assignment Procedures**

28.     The Assumption and Assignment Procedures as set forth in the Motion are hereby approved and made part of this Order as if fully set forth herein. The Assumption and Assignment Procedures are appropriate and fair to all non-Debtor counterparties and comply in all respects with the Bankruptcy Code.

29.     The decision to assume and assign the applicable assumed and assigned contracts and leases to the Successful Bidder is subject to Court approval and the consummation of a Sale of the Assets. Accordingly, absent consummation of such Sale, the applicable assumed and assigned contracts and leases shall not be deemed assumed or assigned and shall, in all respects, be subject to further administration under the Bankruptcy Code.

**(a)      Cure Notice**

30.     The Cure Notice, substantially in the form attached hereto as ***Exhibit C***, is (a) reasonably calculated to provide sufficient effective notice to all non-Debtor counterparties to assumed and assigned contracts or leases and any other affected parties of the Debtor's intent to assume and assign such contracts or leases and to afford the non-Debtor counterparty to each such contract or lease the opportunity to exercise any rights affected by the Motion pursuant to

4847-3948-5510\6

Bankruptcy Code section 365 and Bankruptcy Rules 2002, 6004 and 6006, and (b) hereby approved.

31.    The inclusion of a contract on a Cure Notice shall not constitute or be deemed a determination or admission by the Debtor, the Stalking Horse, the Successful Bidder or any other party in interest that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, that such contract or lease will be assumed in connection with the Sale of the Assets or an admission of the amount necessary to cure defaults under such document. The Debtor reserves all of its rights, claims and causes of action with respect to the contracts or leases listed on the Cure Notice.

32.    On or before April 21, 2017, the Debtor will file with this Court and serve on each non-Debtor counterparty to an executory contract or unexpired lease related to the Assets the Cure Notice, substantially in the form attached to the Bidding Procedures Order. The Cure Notice shall:

(i)    state the cure costs, if any, that the Debtor believes are necessary to assume such contracts or leases pursuant to section 365 of the Bankruptcy Code (the "**Cure Costs**");

(ii)   notify the non-Debtor counterparty that such party's contract(s) or lease(s) may be assumed and assigned to the Successful Bidder of the Assets at the conclusion of the Auction;

(iii)  state the date of the Sale Hearing and that objections to any Cure Costs or to assumption and assignment will be heard at the Sale Hearing, or at a later hearing, as determined by the Debtor; and

(iv)   state the Cure Objection Deadline (as defined below) by which the non-Debtor counterparty shall file an objection to the Cure Costs or to the assumption and assignment of the applicable contract(s) and/or lease(s) (such objection, a "**Cure Objection**"); *provided, however*, that the inclusion of a contract, lease or agreement on the Cure Notice shall not constitute an admission that such contract, lease or agreement is an executory contract or unexpired lease or that it will, in fact, be assumed and assigned in connection with the Sale of the Assets. If no Cure Costs are listed, the Debtor believes that no amount to cure defaults under the

13

respective executory contract or unexpired lease is owed by it thereunder. The Debtor reserves all of its rights, claims and causes of action with respect to the contracts, leases and agreements listed on the Cure Notice.

**(b)**      **Cure Objection Procedures**

33.      All Cure Objections, if any, must be in writing and filed with the Clerk of the Court, 824 Market St. N, 3rd Floor, Wilmington, DE 19801, and served on the Notice Parties and the Stalking Horse Bidder so as to be received by **May 5, 2017 at 4:00 p.m. (prevailing Eastern Time)** (the "**Cure Objection Deadline**").

34.      Any Cure Objection must state (a) the basis for such objection and (b) with specificity what Cure Costs the non-Debtor counterparty to the relevant executory contract(s) or unexpired lease(s) believes is required (in all cases with appropriate documentation in support thereof).

35.      Any Cure Objection solely to the Cure Costs shall not prevent or delay the Debtor's assumption and assignment of assumed and assigned contract(s) or lease(s). If a party objects solely to Cure Costs, the Debtor may, with the consent of the Successful Bidder(s), hold the claimed Cure Costs in reserve pending further order of the Court or mutual agreement of the parties. So long as the Cure Costs are held in reserve, and there are no other unresolved objections to assumption and assignment of the applicable assumed and assigned contract(s) or lease(s), the Debtor can, without further delay, assume and assign such contract(s) or lease(s) to the Successful Bidder(s). Under such circumstances, the objecting non-Debtor counterparty's recourse is limited to the funds held in reserve.

36.      If no objection to the Cure Costs is timely received, the Cure Costs set forth in the Cure Notice shall be controlling notwithstanding anything to the contrary in any assigned contract(s) or lease(s) or other document(s) as of the date of the Cure Notice.

4847-3948-5510\6

37.     To the extent that any non-Debtor counterparty wishes to object to the adequate assurance of future performance by the Successful Bidder(s) of its applicable executory contract(s) or unexpired lease(s) (an "**Adequate Assurance Objection**"), then such non-Debtor counterparty shall file a written Adequate Assurance Objection with the Court and serve such objection on the Notice Parties, the Stalking Horse Bidder and the Successful Bidder(s) so that such Adequate Assurance Objection is filed with the Court and received by the Notice Parties and the Stalking Horse Bidder on or before **May 5, 2017, at 4:00 p.m. (prevailing eastern time)** (the "**Adequate Assurance Objection Deadline**").

38.     To the extent that any non-Debtor counterparty fails to timely file and serve a written Cure Objection as set forth above, such counterparty will be:  (i) deemed to have consented to the Cure Costs, if any, set forth in the Cure Notice; (ii) barred, estopped and enjoined from asserting any additional Cure Costs under the assumed and assigned executory contract(s) or unexpired lease(s); and (iii) barred from objecting to the assumption and assignment of the applicable assumed and assigned executory contract(s) or unexpired lease(s) to the Successful Bidder(s).

39.     To the extent that any non-Debtor counterparty fails to timely file and serve an Adequate Assurance Objection as set forth above, such counterparty will be barred from objecting to adequate assurance of future performance by the Stalking Horse Bidder and Successful Bidder(s).

**G.      Related Relief**

40.     The Debtor is hereby authorized and empowered to take such actions as may be reasonably necessary to implement and effect the terms and requirements established by this Order.

4847-3948-5510\6

41.     This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

42.     This Order shall be binding on the Debtor, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the Debtor's estate.

43.     Notwithstanding the possible applicability of any Bankruptcy Rules, including Rules 6004(h), 6006(d), 7052, and 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

44.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated: April 20 , 2017
       Wilmington, Delaware

_____
THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

16

4847-3948-5510\6