IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| ATOPTECH, INC.,[1] | : | Case No. 17-10111 (MFW) |
| Debtor. | : | |

**EMERGENCY MOTION OF SYNOPSYS, INC. FOR ENTRY OF
AN ORDER (I) COMPELLING CERTAIN DISCLOSURES BY
JINGYUAN HAN, KING MARK INTERNATIONAL LIMITED, AND AVATAR
INTEGRATED SYSTEMS, INC. AND (II) ADJOURNING THE SALE HEARING**

Synopsys, Inc. ("Synopsys"), by and through the undersigned counsel, hereby moves (this "Motion") the Court for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), (i) compelling the parties to that certain Asset Purchase Agreement by and Between Jingyuan Han, for and on Behalf of Purchaser, King Mark International Limited, as Guarantor, and ATopTech, Inc., dated as of April 18, 2017 and filed with the Court on April 19, 2017 [Docket No. 223] (as amended by the First Amendment to Asset Purchase Agreement dated as of April 28, 2017 and filed with the Court on April 28, 2017 [Docket No. 249], the "Amended APA"), to disclose, before May 5, 2017, whether they will agree to waive the condition specified in Section 8.1(d) of the Amended APA requiring the parties to obtain a CFIUS Clearance[2] for the proposed transaction prior to closing; and (ii) adjourning the hearing (the "Sale Hearing") to consider the *Motion of Debtor for Orders (I)*

---

[1] The last four digits of the Debtor's federal tax identification number is 14-1881945. The Debtor's headquarters and mailing address is 2111 Tasman Drive, Santa Clara, CA 95054.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Amended APA or the Sale Motion, as the case may be.

11017597.2

*Authorizing and Approving (A) Bidding Procedures, (B) Buyer Protections for Stalking Horse, (C) Procedures Related to the Assumption and Assignment of Certain Executory Contracts And Unexpired Leases; (D) The Form and Manner of Notice;(II) Scheduling the Bid Deadline and Auction (III) Authorizing and Approving (A) the Sale of Certain Assets Free and Clear of All Liens, Claims, Encumbrances and Interests and (B) the Assumption and Assignment of Certain Contracts and (IV) Granting Related Relief* [Docket No. 32] (the "Sale Motion") from May 12, 2017 to any date between May 16 through 24, 2017 or thereafter.  In support of the Motion, Synopsys incorporates by reference the *Declaration of Richard Wynne in Support of the Emergency Motion of Synopsys, Inc. for Entry of an Order (I) Compelling Certain Disclosures by Jingyuan Han, King Mark International Limited, and Avatar Integrated Systems, Inc. and (II) Adjourning the Sale Hearing* (the "Wynne Declaration"), filed contemporaneously herewith and respectfully states as follows:

**PRELIMINARY STATEMENT**

1.     This Motion is necessary so that (a) potential bidders at the Auction for the sale of the Debtor's business can obtain proper disclosure of the value of the stalking horse bid represented by the Amended APA before they have to submit bids on May 5, 2017 and (b) Synopsys can have sufficient time to receive adequate responses to its inquiries in order to properly evaluate the proposed transaction and conduct limited discovery.  The Debtor spent nearly two months after the February 21, 2017 hearing to consider approval of its proposed bid procedures searching for a new stalking horse purchaser before they finally entered into the Amended APA.  While Synopsys does not have any objection to the length of time it took the Debtor to find a new stalking horse, the Debtor should not now be permitted to curtail or cut off Synopsys' discovery rights or ability to effectively respond to the new proposal by claiming an expedited sales process is necessary.

11017597.2

2. The terms of the Amended APA and new stalking horse bid are different—in very material ways—from the sale to Draper Athena that the Debtor previously proposed, and the Debtor has so far unreasonably refused to agree to a short adjournment of the Sale Hearing to allow Synopsys to take limited discovery so that it can properly evaluate and respond to this new proposed transaction.

3. The potential sale of substantially all of the Debtor's assets to Avatar Integrated Systems, Inc. ("Avatar"), a newly formed entity that appears to be controlled by Chinese steel magnate, Jingyuan Han, or his affiliates, raises serious concerns for Synopsys, both as the Debtor's largest creditor and as the holder of valuable intellectual property rights that the Debtor has repeatedly infringed. Chief among those concerns is that the Amended APA conditions closing of the sale on obtaining a CFIUS Clearance for the proposed transaction and unless Avatar (or Mr. Han or another person or entity in control of Avatar) elects to waive this requirement and close the transaction shortly after the Auction (assuming Avatar is the successful bidder), the Debtor will borrow $6 million in DIP financing (the "DIP Loan") from Avatar in order to subsidize its operational losses while the CFIUS Clearance process unfolds. This development means that even in a best case scenario, the Debtor's estate would realize less than $3 million in net sale proceeds once the DIP Loan is repaid. In a worst case scenario, if CFIUS ultimately does not approve the transaction, the Avatar Parties (defined below) would be permitted to back out of the transaction and seek to force the Debtor to repay the DIP Loan or seek to foreclose on the collateral securing the DIP Loan—namely, the Debtor's intellectual property.[3] This DIP financing construct effectively shifts the risks of CFIUS approval away from Avatar, to be borne by the Debtor's creditors—principally Synopsys. And, any U.S. bidder

---

[3] There is a substantial doubt as to whether Avatar can ever obtain CFIUS approval for the proposed transaction and, thus, the proposed DIP Loan structure itself appears to be an improper means to circumvent the CFIUS review process and obtain the Debtor's intellectual property by foreclosing on its security interest.

that does not require CFIUS approval could submit a $3.5 million or $4 million bid and that bid would be superior to the Amended APA.

4.	For these reasons, it is imperative that Avatar and its affiliates disclose before the May 5, 2017 bid deadline (the "Bid Deadline") whether, if Avatar is the successful bidder at the Auction, they will agree to waive the CFIUS Clearance requirement set forth in Section 8.1(d) of the Amended APA and proceed with closing immediately after the Sale Hearing, thus eliminating any necessity for the DIP Loan. Absent this disclosure, there is no way for other potential bidders to know what they are bidding against, and whether the Avatar transaction will yield $9 million to the estate or only a possible $3 million. This uncertainty will have the effect of chilling bidding.

5.	It is also essential that Synopsys be given a meaningful opportunity to conduct discovery regarding the proposed sale transaction and DIP Loan. After reviewing the newly proposed stalking horse agreement, Synopsys noticed depositions of Mr. Han and the guarantor, King Mark International Limited ("King Mark," and together with Mr. Han and Avatar, the "Avatar Parties") for May 3, 2017. The Avatar Parties have requested that those deposition(s) be rescheduled for May 10, 2017, so that it can first be determined whether Avatar is the successful bidder at the Auction on May 9, 2017.[4] The Debtor has similarly requested that at least the deposition of its CEO, Mr. Chern, and perhaps that of its Vice President of Finance, Ms. Chen, as well, proceed on May 10 or 11, 2017. Synopsys is amenable to this schedule; provided that the Sale Hearing is also briefly postponed to allow sufficient time following the depositions (which the Avatar Parties have requested be held in San Francisco) for Synopsys and its counsel

---

[4] The Avatar Parties have also taken the position that Synopsys is not entitled to take Mr. Han's deposition due to the filing of the Amended APA, which designates the newly formed Avatar as the purchaser, and instead, have offered to provide an unspecified individual as the Rule 30(b)(6) designee of Avatar. Synopsys disagrees with the Avatar Parties' position, but the parties are informally exchanging information and discussing possible alternative deponents.

to complete supplemental briefing and prepare for the Sale Hearing. The Debtor and the Avatar Parties would not agree to this request, leaving Synopsys with no option but to file this Motion.[5]

## JURISDICTION

6. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

7. On January 13, 2017, the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court.

8. On January 17, 2017, the Debtor filed the Sale Motion.

9. On February 13, 2017, Synopsys filed its objection [Docket No. 129] to certain of the relief requested in the Sale Motion, including approval of the proposed Bidding Procedures and related notices that were included as exhibits to the Sale Motion. Among other things, Synopsys objected to the Bidding Procedures and entry of the Bidding Procedures Order on the grounds that the notices attached thereto failed to inform potential bidders that any purchaser of the Debtor's assets would be bound by, and subject to, the Permanent Injunction and Disposition Order (the "Permanent Injunction") entered on December 19, 2016 in *Synopsys, Inc. v. ATopTech, Inc.*, Case No. 13-cv-02965-MMC, now pending in the Unites States District Court for the Northern District of California.

10. On February 21, 2017, the Court held a hearing on approval of the proposed Bidding Procedures and entry of the Bidding Procedures Order (the "Bidding Procedures Hearing"). At the Bidding Procedures Hearing, the Court sustained Synopsys' main substantive

---

[5] The Debtor did indicate that it would agree to adjourn the Sale Hearing from May 12, 2017 to a date the following week, May 15-19, 2017, but has not been able to confirm if the Court is available, and is unwilling to have the Sale Hearing moved to May 22, 23 or 24.

objection and ruled, among other things, that the Bidding Procedures and related notices must include a statement that any purchaser would be bound by the Permanent Injunction and attach a copy of the Permanent Injunction. *See* Wynne Decl., Ex. 1 (Tr. of Hr.'g, Feb. 21, 2017, at 18:2-3, In re AtopTech, Inc., No. 17-11011 (MFW) (Bankr. D. Del.) (Walrath, J.) ("The permanent injunction is applicable to any buyer."); *id*. at 23:17-18 (Walrath, J.) ("Doesn't [the Permanent Injunction] have to be in the notice of the sale?"); *id*. at 25:18-20 (Walrath, J.) (directing the Debtor to "[j]ust say that [the] attached [Permanent Injunction] is applicable to both the debtor and any buyer.")). Following the Court's ruling at the Bidding Procedures Hearing, the original stalking horse bidder withdrew its bid, and the Debtor resumed its marketing efforts.

11. On April 19, 2017, the Debtor filed a series of amended exhibits to the Sale Motion, including the Bidding Procedures Order and exhibits thereto, as revised, and a copy of a new purchase agreement without any of exhibits or schedules attached [Docket No. 223]. The filing of these documents was the first time Synopsys learned of Mr. Han, King Mark or the yet-to-be-named, yet-to-be-formed, purchaser entity later identified as Avatar.[6] Upon reviewing the Amended APA, Synopsys also learned for the first time that DIP financing was being contemplated as part of the sale transaction, although no DIP financing agreement or details regarding the terms of such financing was included.

12. On Friday evening, April 21, 2017, the Debtor filed (a) a copy of the Amended APA with Exhibits and Schedules attached and (b) the *Motion of the Debtor for a Final Order Pursuant to Sections 105, 361, 362, 363(C), 364(C)(1), 364(C)(2), 364(D)(1), 364(E) And 507 of*

---

[6] Prior to the filing of the Amended APA, on April 18, 2017, counsel for Synopsys received an email from Debtor's counsel attaching a revised version of the proposed Bidding Procedures Order along with related exhibits and, in discussions with counsel for the Debtor, was informed that the Debtor was planning on filing these documents, with or without a signed purchase agreement or new stalking horse bidder, the following morning. See Wynne Decl., Ex. 2.

*The Bankruptcy Code Authorizing Debtor to (A) Obtain Post-Petition Secured Financing From Avatar Integrated Systems, Inc.; and (B) Pay Certain Related Fees and Charges* [Docket No. 237] (the "DIP Motion"). The DIP Motion included a term sheet and a budget (the "DIP Budget") projecting substantial operating losses for the Debtor over the next several months.[7]

13. On April 21, 2017, Synopsys noticed various depositions relating to the Amended APA and the DIP Motion, including depositions of King Mark [Docket No. 244] and Jingyuan Han [Docket No. 243] (collectively, the "Notices"). Synopsys also has noticed the depositions of the Debtor's Vice President of Finance, Ms. Chen, , and the Debtor's CEO, Mr. Chern, both of whom will be filing declarations in support of the Sale Motion.[8] Since the Notices were served, Synopsys, the Debtor and the Avatar Parties have met and conferred twice, on April 27, 2017 and again on April 28, 2017, in an attempt to agree upon a workable schedule for conducting depositions and other discovery in connection with the Sale Motion, reducing the proposed number of depositions and for the sharing of information informally and/or by declarations. *See* Wynne Decl., Exs. 4 & 5. While the parties have made progress in resolving some of the issues raised in the meet and confer process, at least two significant issues remain, requiring Court intervention.

14. First, the Avatar Parties have indicated that they will not disclose until *after* the Auction scheduled for May 9, 2017, whether, if Avatar is the successful bidder, they intend to seek a CFIUS Clearance with respect to the proposed transaction. In response to Synopsys' inquiries on this point, the Avatar Parties have stated that, if Avatar is the winning bidder, "absent unforeseen circumstances or objections to the sale process by creditors or the US

---

[7] To date, no DIP financing agreement has been filed with the Court or provided to Synopsys.

[8] Synopsys also noticed a 30(b)(6) deposition with respect to CFIUS issues, but the parties have agreed that such issues will be able to be covered by the Debtor's CEO.

Trustee, we would notify the court on May 10 whether Avatar will seek CFIUS approval." *See* Wynne Decl., Ex. 3. The Avatar Parties have further stated that, "[i]f Avatar does elect to seek CFIUS approval, we would also let you know whether the parties, subject to consultation with Debtor, will waive CFIUS Clearance (as defined in the APA) as a closing condition under Article 8.l(d) of the APA." *Id.*

15. Second, the Avatar Parties have requested that Synopsys agree to reschedule the depositions of King Mark, Mr. Han and/or Avatar for May 10, 2017 in San Francisco, and further agree that such deposition(s) will proceed, if at all, only if Avatar is the winning bidder. *See* Wynne Decl., Ex. 3. As noted above, the Debtor has also informed Synopsys that Ms. Chen is in India until May 8, 2017 and that at least the deposition of Mr. Chern, if not the depositions of both Mr. Chern and Ms. Chen, should take place after the Auction as well. Synopsys is prepared to be flexible about both the date and location of any deposition, and to wait until it is determined whether or not Avatar is the successful bidder, so long as Synopsys and its counsel are given sufficient time following the depositions to obtain a transcript, prepare and file any required supplemental papers with the Court, and prepare for the Sale Hearing. For obvious reasons, it would be impossible for Synopsys to take two or three depositions on May 10 and May 11, obtain transcripts and file any supplemental materials with the Court before a May 12 hearing. *See* Wynne Decl., Exs. 4 & 5.

## RELIEF REQUESTED

16. By this Motion, Synopsys respectfully requests the entry of an order, substantially in the form of the Proposed Order, (a) compelling the Avatar Parties to disclose, before May 5, 2017, whether they will agree to waive the condition specified in Section 8.1(d) of the Amended APA requiring the parties to obtain a CFIUS Clearance for the proposed transaction prior to

closing and (b) adjourning the Sale Hearing to May 22, 23 or 24, 2017, or any time the following week, at the discretion and convenience of the Court.

## BASIS FOR RELIEF REQUESTED

### A. The Avatar Parties Should Be Compelled Disclose Whether, If Avatar Is The Successful Bidder, They Will Waive CFIUS Clearance And Permit The Sale To Close In May

17. The newly proposed DIP financing is a dramatic new development that fundamentally changes the financial aspects of the proposed sale and any benefit it may (or may not) bring the Debtor's estate. The proposed financing in effect funds the Debtor's continuing losses from operations after the Debtor otherwise would run out of cash at the end of July. According to the DIP Budget, the first draw on the DIP Loan will not be until August 7, and a closing is not projected until some time after October 2, 2017. Thus, if, as contemplated, the $6 million DIP Loan is provided by Avatar, those funds will be spent prior to the closing of the sale, and the estate will net approximately $3 million in sale proceeds.[9] Alternatively, if the Avatar Parties agree to waive CFIUS Clearance as a condition to closing, and agree that they will close in May, irrespective of whether they seek CFIUS review/approval, the stalking horse bid has a $9 million value to the Debtor's estate and its creditors. The decision to seek CFIUS approval (or not) therefore fundamentally affects the value of the Avatar Parties' bid.

18. In light of this, the Avatar Parties' proposal to inform other bidders, the Court and Synopsys only the day *after* the Auction, as to whether they will be seeking CFIUS approval or will waive CFIUS Clearance and seek to close in May, does not address the problem faced by potential bidders in formulating bids. Namely, other bidders must be able to determine *before* submitting their bids on May 5, 2017, whether they are effectively bidding against a bid of $3

---

[9] If CFIUS approval is sought as a condition to closing, Avatar's bid is the equivalent of a $3 million bid (plus the breakup fee) by a domestic buyer who is not subject to CFIUS and who can close immediately. Such a buyer would be responsible for whatever operating losses the business incurs in the future.

million or $9 million in value to the estate. Allowing the Avatar Parties to withhold this information until after all bids have been submitted gives them an unfair advantage in the Auction because it effectively gives them the option of taking a wait-and-see approach to CFIUS approval. If there is no overbid, then they can announce their intention on May 10 to proceed with seeking CFIUS Clearance without any risk of losing the Auction. If there is an overbid, depending on whether such bid is by a domestic or foreign buyer, the Avatar Parties can then wait until May 10 to announce that they will not seek CFIUS Clearance, and argue that their bid is the highest and best offer.

19. For the above reasons, Synopsys requests that the Court enter an order compelling the Avatar Parties to disclose, no later than the close of business on May 4, 2017, whether they intend to seek a CFIUS Clearance with respect to the proposed transaction, and whether they will agree to waive CFIUS Clearance as a condition to closing and proceed with a May closing of the sale.

### B. The Sale Hearing Should Be Adjourned To Permit Synopsys A Reasonable Opportunity To Take Discovery Following The Auction

20. When Synopsys indicated it had no further comments to the draft Bidding Procedures Order that was circulated on April 18, 2017, it had not been informed about three crucial pieces of information that would have changed its view had they been timely disclosed: (a) the identity of the Avatar Parties; (b) the terms of the Amended APA with respect to obtaining a CFIUS Clearance; and (c) the proposed $6 million DIP Loan and associated budgetary projections. This is not intended as a criticism of the Debtor, Synopsys presumes that negotiations were ongoing and that the Debtor did not actually know until the Amended APA was finalized and signed whether it would reach agreement and what the final terms would be. Indeed, the DIP Loan term sheet was apparently not finished for several more days. However,

the Debtor's characterization of the new stalking horse agreement as a mere "amendment" to the agreement with Draper Athena that was initially filed with the Sale Motion is misleading. The Amended APA is an entirely different transaction with entirely different counterparties that would provide far less value to creditors and the estate if the closing is conditioned on CFIUS Clearance. It is, therefore, essential that Synopsys be afforded a reasonable opportunity to depose the Debtor and the Avatar Parties in advance of the Sale Hearing.

21. Synopsys agrees with the Debtor and the Avatar Parties that such depositions do not have to occur until after the Auction, so that the results of the Auction can be considered and allow parties to proceed in the most efficient manner. However, Synopsys cannot take two or three depositions obtain transcripts and prepare appropriate supplemental papers in the two business days between the Auction and the Sale Hearing, even presuming that the depositions all occur on the same coast. Given the Court's apparent lack of availability during the week of May 15-19, 2017, Synopsys therefore requests that the Court adjourn the Sale Hearing to May 22, 23 or 24, or such later date the following week as the Court may determine.

**NOTICE**

22. Notice of this Motion shall be given to (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Debtor; (c) those creditors holding the 30 largest unsecured claims against the Debtor's estate; (d) counsel to the Avatar Parties; and (e) any party that has requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. Synopsys submits that no other or further notice is necessary.

**NO PRIOR REQUEST**

23. No prior request for the relief sought herein has been made to this Court or any other Court.

WHEREFORE, Synopsys respectfully requests that the Court enter an order substantially in the form of the Proposed Order and grant, such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated: May 2, 2017<br>Wilmington, Delaware | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br><br> */s/ Tamara K. Minott*<br>Derek C. Abbott (No. 3376)<br>Tamara K. Minott (No. 5643)<br>1201 N. Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, DE 19899<br>Telephone: (302) 658-9200<br>Facsimile:  (302) 658-3989<br><br>and<br><br>**JONES DAY**<br>Richard L. Wynne<br>Stacey L. Corr-Irvine<br>Peter S. Saba<br>250 Vesey Street<br>New York, NY 10281-1047<br>Telephone:    (212) 326-3939<br>Facsimile:     (212) 755-7306<br><br>and<br><br>Patrick T. Michael<br>Krista S. Schwartz<br>555 California Street, 26th Floor<br>San Francisco, CA 94104<br>Telephone:    (415) 626-3939<br>Facsimile:     (415) 875-5700<br><br>*Counsel to Synopsys, Inc*. |