## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>**ATOPTECH, INC.,**<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 17-10111(MFW)<br><br>Re: Docket Nos. 32 , 234 & 297 |

### ORDER (A) APPROVING THE ASSET PURCHASE AGREEMENT; (B) APPROVING THE SALE TO THE PURCHASER OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTOR PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES; (C) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE; (D) AUTHORIZING THE DEBTORS TO CONSUMMATE TRANSACTIONS RELATED TO THE ABOVE; AND <u>(E) GRANTING OTHER RELIEF</u>

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtor and debtor-in-possession (the "<u>Debtor</u>") pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") for entry of an order (this "<u>Sale Order</u>") (a) authorizing and approving that certain Asset Purchase Agreement dated as of April 18, 2017 (as amended and restated at D.I. 340) (the "<u>Purchase Agreement</u>"), between the Debtor, as seller, and Avatar Integrated Systems, Inc. ("<u>Avatar</u>") as the Successful Bidder (also, the "<u>Purchaser</u>"), (b) approving the sale of the Debtor's assets pursuant to the Purchase Agreement (the "<u>Transferred Assets</u>"), (c) approving the assumption and assignment of certain executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code, (d) authorizing the Debtor to consummate transactions related to the Purchase Agreement, and (e) granting other relief, all as more fully described in the Motion; and the Court having entered on April 21, 2017, the

---

[1] The last four digits of the Debtor's federal tax identification number are 1945. The Debtor's headquarters and mailing address is 2111 Tasman Drive, Santa Clara, CA 95054.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order or the Purchase Agreement as applicable.

*Order (I)(A) Establishing Bidding Procedures For The Sale Of All, Or Substantially All, Of The Debtor's Assets; (B) Approving Buyer Protections; (C) Establishing Procedures Relating To The Assumption And Assignment Of Executory Contracts And Unexpired Leases; (D) Approving Form And Manner Of The Sale, Cure And Other Notices; (E) Scheduling An Auction And (F) Scheduling A Hearing To Consider (1) Approval Of The Sale Of The Debtor's Assets Free And Clear Of Claims, Liens And Encumbrances And (2) Approving The Assumption And Assignment Of Executory* [D.I. 234] (the "Bidding Procedures Order"); and the Debtor having conducted the Auction on May 9-10, 2017; and the Debtor at the conclusion of the Auction having determined that the highest and otherwise best offer for the Transferred Assets was made by the Successful Bidder pursuant to the Purchase Agreement; and the Court having conducted a hearing on May 12, 2017 (the "Sale Hearing"), at which time all parties-in-interest were offered an opportunity to be heard with respect to the proposed sale of the Transferred Assets (the "Sale"), to consider the approval of the Sale pursuant to the terms and conditions of the Purchase Agreement, and Synopsys, Inc. ("Synopsys") having filed its *Objection to (I) the Debtor's Proposed Sale to Avatar Integrated Systems, Inc. and (II) Motion to Obtain Post-Petition Secured Financing* [D.I. 297] (the "Synopsys Objection"); and the Court having considered: (i) the Motion and any objections thereto; (ii) the proposed Sale by Debtor to the Successful Bidder pursuant to the Purchase Agreement; (iii) the arguments of counsel made, and evidence adduced, related thereto, including the Declaration of Jue-Hsien Chern [D.I. 332], the Supplemental Declaration of Randy Lederman [D.I. 330], and the Declaration of Bill Lee [D.I. 334] in support of the Motion; and (iv) the full record in the above captioned bankruptcy case (the "Bankruptcy Case"), including the record related to the hearing to consider the Bidding Procedures Order and the Sale Hearing held before the Court; all parties-in-interest having been heard, or having had the opportunity to be heard, regarding the approval of the Purchase Agreement and Sale of the Transferred Assets and

2

other transactions contemplated by the Purchase Agreement; and it appearing that the relief

requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and other

parties in interest; it is hereby

<strong>FOUND, CONCLUDED, AND DETERMINED THAT:</strong>[3]

A.    The findings and conclusions set forth herein constitute this Court's findings of

fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this

Bankruptcy Case pursuant to Bankruptcy Rule 9014.

B.    To the extent that any of the following findings of fact constitute conclusions of

law, they are adopted as such.  To the extent any of the following conclusions of law constitute

findings of fact, they are adopted as such.

C.    This Court has jurisdiction over the Motion and over the property of the Debtor,

including the Transferred Assets to be sold, transferred, and conveyed pursuant to the Purchase

Agreement, pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of the Motion constitutes a

core proceeding under 28 U.S.C. § 157(b)(2).  Venue for this Case and proceedings on the

Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    This Sale Order constitutes a final order within the meaning of 28 U.S.C. §

158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary

under Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedure, as made

applicable by Bankruptcy Rule 7054, this Court finds that there is no just reason for delay in the

implementation of this Sale Order, and directs entry of judgment as set forth herein.

E.    The Transferred Assets constitute property of the Debtor's estate and title thereto

is vested in Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code.

---

[3] All findings of fact and conclusions of law announced by the Court at the Sale Hearing
in relation to the Motion are hereby incorporated herein to the extent not inconsistent herewith.

F.    The statutory bases for the relief requested in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014 and Local Rule 6004-1.

G.    On January 13, 2017 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") commencing this Bankruptcy Case.

H.    The Debtor is continuing in the management and operation of its business and property as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this Bankruptcy Case.

I.    This Court entered the Bidding Procedures Order on April 21, 2017: (1) establishing bidding and auction procedures for the sale of the Transferred Assets; (2) approving proposed bid protections to the Stalking Horse Bidder in accordance with the Purchase Agreement; (3) establishing procedures relating to the assumption and assignment of executory contracts and unexpired leases; (4) approving the form and manner of the sale, cure and other notices; and (5) scheduling the Auction and the Sale Hearing to consider the sale of the Transferred Assets.

J.    As evidenced by the affidavits of service and publication previously filed with the Bankruptcy Court [D.I. 75, 245, 248, & 299], and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Auction, the Sale, and the assumption and assignment of the executory contracts and unexpired leases to be assumed and assigned to the Purchaser at Closing pursuant to this Sale Order has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9007, and 9014 and in compliance with the Bidding Procedures Order, to each party entitled to such notice, including, as applicable: (a) all

4

entities known to have expressed a *bona fide* interest in a transaction with respect to the Transferred Assets within the past two years; (b) all entities known to have asserted any lien, claim or encumbrance in or upon any of the Transferred Assets; (c) all federal, state and local environmental, regulatory or taxing authorities or recording offices that have a reasonably known interest in the relief requested by the Motion; (d) the U.S. Trustee; (e) counsel to the Purchaser; (f) counsel to Synopsys; (g) the Internal Revenue Service; (h) the Securities and Exchange Commission; (i) the U.S. Attorney for the District of Delaware; and (j) all persons and entities that have filed a request for service of filings in this Bankruptcy Case pursuant to Bankruptcy Rule 2002.   With respect to entities whose identities are not reasonably ascertained by the Debtor, publication of the Sale Notice in *The New York Times*, National Edition, on April 27, 2017, as evidenced by the affidavit of service filed by the Debtor's notice and claims agent on May 5, 2017, [D.I. 299], was, and is deemed, sufficient, and reasonably calculated under the circumstances to reach such entities.   The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale, and the Sale Hearing is, or shall be, required.

K.    The Debtor and its professionals marketed the Transferred Assets and conducted the marketing and sale process in compliance with the Bidding Procedures and the Bidding Procedures Order.   Based upon the record of these proceedings, creditors and other parties in interest and prospective purchasers were afforded a reasonable and fair opportunity to bid for the Transferred Assets.

L.    At the conclusion of the Auction and after reviewing all Qualified Bids (as defined in the Bidding Procedures), the Debtor, in consultation with its advisors, determined in a valid and sound exercise of its business judgment that the highest or otherwise best Qualified Bid

5

for the Transferred Assets was that of the Successful Bidder as set forth in the Purchase Agreement.

M.     Following Avatar's submission of what was ultimately determined to the be the Successful Bid, the Debtor and Synopsys agreed to resolve the Synopsys Objection on the terms set forth in a stipulation between the Debtor and Synopsys dated May, 12, 2017 (the "Synopsys Stipulation"), provided that the terms of the Synopsys Stipulation are approved by this Court in this Order approving and authorizing the Debtor's entry into the Purchase Agreement (as amended following the Auction) and consummation of the Successful Bid. A true and correct copy of the Synopsys Stipulation is attached as Exhibit A and is incorporated herein by reference.

N.     Good and sufficient reasons for the approval of the Purchase Agreement, including entry into the Transition Services Agreement pursuant to the Fourth Amendment to the Purchase Agreement, and entry into and the Synopsys Stipulation have been articulated by the Debtor. Pursuant to section 363(b) of the Bankruptcy Code, the Debtor has demonstrated compelling circumstances for the Sale outside the ordinary course of business. entry into the Transition Services Agreement, and entry into the Synopsys Stipulation in that, among other things, the immediate consummation of the Sale, entry into the Transition Services Agreement, and entry into the Synopsys Stipulation are necessary and appropriate to preserve and maximize the value of the Debtor's estate.

O.     The Debtor has demonstrated that the Synopsys Stipulation is fair and equitable.

P.     The Debtor has articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the Sale process.

Q.     The Sale Notice provided all interested parties with timely and proper notice of the Sale contemplated by the Purchase Agreement, the Sale Hearing, and the Auction.

NAI-1502702819v12
4839-3161-8888\11

R.     The disclosures made by the Debtor in the Motion, the Sale Notice, and related documents filed with the Bankruptcy Court concerning the Purchase Agreement, the Auction, the Sale and the Sale Hearing were good, complete and adequate.

S.     The Bidding Procedures set forth in the Bidding Procedures Order were non-collusive, proposed and executed in good faith as a result of arms'-length negotiations, and were substantively and procedurally fair to all parties.

T.     The Debtor conducted the Sale process in accordance, and has otherwise complied in all respects, with the Bidding Procedures Order.  The Sale process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any entity to make a higher or otherwise better offer to purchase the Transferred Assets.  All potential bidders, including the Purchaser, were afforded an adequate opportunity to conduct diligence on the Debtor and the Transferred Assets, including without limitation, receiving access to complete and unredacted copies of all objections and declarations filed under seal by Synopsys in the Bankruptcy Case.

U.     The Auction was duly noticed and conducted on the record in a diligent, non-collusive, fair and good faith manner, and the Auction process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to qualify as a bidder, participate in the Auction and to make a higher or otherwise better offer to purchase the Transferred Assets.  The Debtor (i) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Transferred Assets and (ii) considered any bids submitted on or before the deadline established by the Court for the submission of bids.

7

V.      The terms contained in the Purchase Agreement constitute the highest and best offer for the Transferred Assets and will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative.

W.      The Purchase Agreement and the Sale contemplated thereby represent a fair and reasonable offer to purchase the Transferred Assets under the circumstances of the Bankruptcy Case.  No other entity or group of entities has presented a higher or otherwise better offer to Debtor to purchase the Transferred Assets for greater economic value to the Debtor's estate than the Purchaser.

X.      Approval of the Motion and the Purchase Agreement and the consummation of the Sale contemplated thereby are in the best interests of the Debtor, its creditors and estate, and other parties in interest.

Y.      The Debtor has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale because, among other reasons: (1) the Purchase Agreement constitutes the highest and best offer for the Transferred Assets; (2) the Purchase Agreement and the closing thereon will present the best opportunity to realize the value of the Transferred Assets on a going-concern basis and avoid decline and devaluation of the Transferred Assets; and (3) any other transaction would not have yielded as favorable an economic result.

Z.      The Purchaser is purchasing the Transferred Assets in good faith and is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code and is not an "insider" of the Debtor (as defined under section 101(31) of the Bankruptcy Code).  No common identity of directors or controlling stockholders exists between the Purchaser and the Debtor.  The Purchaser has proceeded in good faith in all respects in connection with this Bankruptcy Case in that:  (1) the Purchaser recognized that the Debtor was free to deal with any other party

8

interested in acquiring the Transferred Assets; (2) the Purchaser complied with the provisions in the Bidding Procedures Order; (3) the Purchaser agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (4) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed; (5) the Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (6) the negotiation and execution of the Purchase Agreement, including the Sale contemplated thereby, were at arms' length and in good faith. The Purchaser, therefore, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

AA.    The Purchase Agreement and the transactions contemplated thereby cannot be avoided under section 363(n) of the Bankruptcy Code. The Debtor and the Purchaser have not engaged in any conduct that would cause or permit the Purchase Agreement or the consummation of the transactions contemplated thereby to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

BB.    The consideration provided by the Purchaser pursuant to the Purchase Agreement: (1) is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia (including the Uniform Fraudulent Transfer Act); (2) is fair consideration under the Uniform Fraudulent Transfer Act; (3) is reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory, or possession thereof, or the District of Columbia; and (4) will provide a greater recovery for the Debtor's creditors than would be provided by any other reasonably practicable available alternative.

NAI-1502702819v12
4839-3161-8888\11

CC.    The Purchase Agreement, which constitutes reasonably equivalent value and fair consideration, was not entered into, and the Sale is not consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtor under the Bankruptcy Code or under any other law of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law. Neither the Debtor, nor the Purchaser has entered into the Purchase Agreement or is consummating the Sale with any fraudulent or otherwise improper purpose.

DD.    By consummating the Sale, the Purchaser is not a mere continuation of Debtor or Debtor's estate, and there is no continuity between the Purchaser and the Debtor. The Purchaser is not holding itself out to the public as a continuation of the Debtor. The Purchaser is not a successor to the Debtor or the Debtor's estate by reason of any theory of law or equity, and the Sale does not amount to a consolidation, merger, or *de facto* merger of the Purchaser and the Debtor. Except as expressly provided in the Purchase Agreement and the Permanent Injunction, neither the Purchaser nor any of its affiliates shall assume any obligation or liability of Debtor or Debtor's estate, including any obligation under any collective bargaining agreement or labor practice agreement.

EE.    The Sale neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating plan of reorganization of the Debtor. The Sale does not constitute a *sub rosa* plan.

FF.    The Sale of the Transferred Assets is consistent with the Debtor's policy concerning the transfer of personally identifiable information and the Debtor has, to the extent necessary, satisfied section 363(b)(1) of the Bankruptcy Code. Accordingly, appointment of a consumer ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the relief requested in the Motion.

10

GG.    The Debtor, acting by and through its existing agents, representatives, and officers, has full corporate power and authority to execute and deliver the Purchase Agreement and all other documents contemplated thereby and to perform all of its obligations thereunder, and no further consents or approvals are required for the Debtor to consummate the Sale contemplated by the Purchase Agreement, except as otherwise set forth in the Purchase Agreement. For the avoidance of doubt, the transfer of the Transferred Assets to the Purchaser shall not be free and clear of the Permanent Injunction.

HH.    The transfer of each of the Transferred Assets to the Purchaser will be, as of the Closing Date, a legal, valid, and effective transfer of such assets, and vests or will vest the Purchaser with all right, title, and interest of Seller to the Transferred Assets free and clear of all Interests or Claims (as defined below) accruing, arising or relating thereto any time prior to the Closing Date, unless otherwise specifically assumed pursuant to the Purchase Agreement.

II.    Except with respect to the Permitted Liens as set forth in the Purchase Agreement (for avoidance of doubt, the Permanent Injunction[4] is defined in the Purchase Agreement as a Permitted Lien), the Debtor may sell the Transferred Assets free and clear of all Interests or Claims against Debtor, its estate, or any of the Transferred Assets (unless otherwise assumed in the Purchase Agreement) because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied. Those holders of Interests or Claims against the Debtor, its estate, or any of the Transferred Assets who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Interests or Claims that did object fall within one or more of the other subsections of section 363(f) are adequately

---

[4] On December 19, 2016 a Permanent Injunction and Disposition Order (the "Permanent Injunction") was entered in the *Synopsys, Inc. v. ATopTech, Inc.*, Case No. 13-cv-02965-MMC litigation pending in the United States District Court for the Northern District of California, San Francisco Division (the "District Court Litigation")

11

protected by having their Interests or Claims, if any, in each instance against Debtor, its estate, or any of the Transferred Assets, attach to the cash proceeds of the Sale ultimately attributable to the Transferred Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force, and effect that such creditor had prior to the Sale, subject to any claims and defenses that Debtor may possess with respect thereto.

JJ.     For the further avoidance of doubt, notwithstanding any language in this Sale Order or the Purchase Agreement to the contrary, the Permanent Injunction shall enjoin and restrain the Debtor and the Purchaser pursuant to the terms thereof and the United States District Court for the Northern District of California, San Francisco Division, shall continue to have jurisdiction to enforce the Permanent Injunction.

KK.     If the Sale were not free and clear of all Interests or Claims (except as otherwise assumed in the Purchase Agreement and the Permanent Injunction) as set forth in this Sale Order and the Purchase Agreement, or if the Purchaser would, or in the future could, be liable for any of the Interests or Claims (except as otherwise assumed in this Sale Order and the Purchase Agreement), the Purchaser would not have entered into the Purchase Agreement and would not consummate the Sale, thus adversely affecting the Debtor and its estate and creditors.

LL.     The Debtor has demonstrated that it is an exercise of its sound business judgment for Debtor to assume and assign the Designated Contracts to the Purchaser, in each case in connection with the consummation of the Sale, and the assumption and assignment of the Designated Contracts is in the best interests of Debtor, its estate, and its creditors and other parties in interest. The Designated Contracts being assigned to the Purchaser under the Purchase Agreement are an integral part of the Purchase Agreement and the Sale and, accordingly, such assumptions and assignments are reasonable and enhance the value of the Debtor's estate. Any non-Debtor counterparty to any Designated Contract that has not actually filed with the Court an

12

objection to such assumption as of the date hereof is deemed to have consented to such assumption and assignment.

MM.    Debtor and the Purchaser have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A), 365(b)(1)(B), and 365(f) of the Bankruptcy Code, in connection with the sale and assumption and assignment of the Designated Contracts to the extent provided under the Purchase Agreement and:  (1) the Debtor will cure any default existing prior to the date hereof under any of the Designated Contracts, within the meaning of section 365(b)(l)(A) of the Bankruptcy Code; and (2) the Purchaser has provided adequate assurance of future performance of and under the Designated Contracts, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code.  Each provision of the Designated Contracts or applicable non-bankruptcy law that purports to prohibit, restrict or condition, or could be construed as prohibiting, restricting or conditioning, assignment of any Designated Contract, has been satisfied or is otherwise unenforceable under Bankruptcy Code section 365.

NN.    The Purchase Agreement and Sale must be approved and the Closing must occur promptly and as set forth in the Purchase Agreement to preserve the value of the Debtor's assets.

OO.    The Sale constitutes a reasonable and sound exercise of Debtor's business judgment, is in the best interests of Debtor, its estate, creditors, and other parties in interest, and should be approved.

PP.    The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale.

13

QQ.    Nothing in the Purchase Agreement creates any third party beneficiary rights in any entity not a party to the Purchase Agreement; provided, however, that for the avoidance of doubt, the Permanent Injunction shall enjoin and restrain the Debtor and the Purchaser pursuant to the terms thereof and Synopsys shall continue to have the right to enforce the Permanent Injunction.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.    The relief requested in the Motion is granted as set forth herein.

2.    Any and all objections and responses to the Motion that have not been withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby overruled and denied on the merits.

3.    Notice of the Motion, the Auction, the Sale Hearing, and the Sale was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

<u>**Approval of the Sale of Transferred Assets**</u>

4.    Pursuant to section 363(b) of the Bankruptcy Code, the Debtor and the Purchaser, acting by and through their existing agents, representatives and officers, are authorized, empowered, and directed to take any and all actions necessary or appropriate to:  (a) consummate the Sale pursuant to and in accordance with the terms and conditions of the Purchase Agreement; (b) close the Sale as contemplated in the Purchase Agreement and this Sale Order; (c) transfer and assign all right, title, and interest to all property, licenses, and rights to be conveyed in accordance with the terms and conditions of the Purchase Agreement and (d) execute and deliver, perform under, consummate, and implement the Purchase Agreement and all additional

14

instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement and such other ancillary documents.  The Purchaser and the Debtor shall have no obligation to close the Sale except as provided for in the Purchase Agreement.

5.      This Sale Order shall be binding in all respects upon the Debtor, its estate, all creditors, all holders of equity interests in the Debtor, all holders of any Interests or Claims (whether known or unknown) against the Debtor, any holders of Interests or Claims against or on all or any portion of the Transferred Assets, all counterparties to any executory contract or unexpired lease of the Debtor (including any collective bargaining agreement or labor practice agreement), the Purchaser and all successors and assigns of the Purchaser, and any trustees, examiners, or other fiduciary under any section of the Bankruptcy Code, if any, subsequently appointed in this Bankruptcy Case or upon a conversion of this Bankruptcy Case to chapter 7 under the Bankruptcy Code.

6.      The terms and provisions of the Purchase Agreement and this Sale Order shall inure to the benefit of the Debtor, its estate and creditors, the Purchaser, and their respective Affiliates, successors and assigns, and any other affected third parties, including all persons asserting any Interests or Claims in the Transferred Assets to be sold to the Purchaser pursuant to the Purchase Agreement, notwithstanding any subsequent appointment of any trustee, party, entity, or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee, party, entity, or other fiduciary such terms and provisions likewise shall be binding.

### Sale and Transfer of Transferred Assets

7.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, upon the Closing Date and pursuant to and except as otherwise expressly set forth in the

15

Purchase Agreement, including with respect to Permitted Liens, the Transferred Assets shall be transferred to the Purchaser free and clear of all encumbrances, claims, interests, and liens, including the Excluded Liabilities, mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, collective bargaining agreements, leases, licenses, options, deeds of trust, security interests, other interests, conditional sale or other title retention agreements, pledges, and other liens (including mechanics', materialman's, and other consensual and non-consensual liens and statutory liens), judgments, demands, encumbrances, rights of first refusal, offsets, contracts, recoupment, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, or tax, decrees of any court or foreign or domestic governmental entity, or charges of any kind or nature, if any, including any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, including any pension liabilities, retiree medical benefit liabilities, liabilities related to the Employee Retirement Income Security Act of 1974, liabilities related to the Internal Revenue Code, or any other liability relating to Debtor's current and former employees, including any withdrawal liabilities or liabilities under any collective bargaining agreement or labor practice agreement (to the extent not assumed under the Purchase Agreement), of the Debtor or any of the Debtor's predecessors or Affiliates, claims, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of this Bankruptcy Case, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability (other than Assumed Liabilities) (collectively, the "Interests or

16

Claims"), with all such Interests or Claims to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force, and effect that they had against the Transferred Assets, subject to any claims and defenses the Debtor may possess with respect thereto. Furthermore, except as otherwise expressly provided in the Purchase Agreement, the Purchaser and its affiliates shall not have any liabilities for the prepetition and pre-Closing Date conduct of the Debtor or any of its officers, directors, employees, or agents, including any conduct which may be the subject of ongoing investigations by the federal government, and the federal government may not seek to set off or recoup any such investigation liabilities against payment obligations for post-Closing shipments of goods to the federal government.

8.      Notwithstanding any language in this Sale Order, including paragraph 7 herein, or the Purchase Agreement to the contrary, the Permanent Injunction shall enjoin and restrain the Debtor and the Purchaser pursuant to the terms thereof.

9.      On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Transferred Assets and shall constitute a bill of sale transferring good and marketable title in such Transferred Assets to the Purchaser pursuant to the terms and allocations set forth in the Purchase Agreement. For the avoidance of doubt, the Excluded Assets set forth in the Purchase Agreement are not included in the Transferred Assets.

10.     Subject to the terms and conditions of this Sale Order, the transfer of Transferred Assets to the Purchaser pursuant to the Purchase Agreement and the consummation of the Sale and any related actions contemplated thereby do not require any consents other than as specifically provided for in the Purchase Agreement, constitute a legal, valid, and effective transfer of the Transferred Assets, and shall vest Purchaser with right, title, and interest of the Debtor in and to the Transferred Assets as set forth in the Purchase Agreement, as applicable,

17

free and clear of all Interests or Claims of any kind or nature whatsoever (except as otherwise specifically assumed in the Purchase Agreement and as set forth in paragraphs 7-8 herein).

11.    To the greatest extent available under applicable law and except as provided in the Purchase Agreement, the Purchaser, as provided by the Purchase Agreement, shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtor with respect to the Transferred Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date as provided by the Purchase Agreement.  To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any grant, permit, or license relating to the operation of the Transferred Assets sold, transferred, assigned, or conveyed to the Purchaser on account of the filing or pendency of this Bankruptcy Case or the consummation of the Sale.

12.    All entities that presently are, or on the Closing may be, in possession of some or all of the Transferred Assets to be sold, transferred, or conveyed (wherever located) to the Purchaser pursuant to the Purchase Agreement hereby are directed to surrender possession of the Transferred Assets to the Purchaser on the Closing Date.

13.    Upon consummation of the Sale set forth in the Purchase Agreement, if any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Interests or Claims against or in the Transferred Assets shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfactions, releases of all Interests or Claims that the person or entity has with respect to the Transferred Assets (unless otherwise expressly assumed in the Purchase Agreement), or otherwise, then: (a) the

18

Debtor hereby is authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Transferred Assets and (b) the Purchaser hereby is authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests or Claims in the Transferred Assets of any kind or nature (except as otherwise assumed in the Purchase Agreement).  For the avoidance of doubt, to the extent necessary, upon consummation of the Sale set forth in the Purchase Agreement, the Purchaser is authorized to file, with respect to the Transferred Assets, termination statements, lien terminations, or other amendments in any required jurisdiction to remove and record, notice filings or financing statements recorded to attach, perfect or otherwise notice any lien or encumbrance that is extinguished or otherwise released pursuant to this Sale Order under section 363 and the related provisions of the Bankruptcy Code.

14.    All entities, including all lenders, debt security holders, equity security holders, governmental, tax, and regulatory authorities, parties to executory contracts and unexpired leases, customers, employees and former employees, dealers and sale representatives, and trade or other creditors holding Claims or Interests of any kind or nature whatsoever in or against the Debtor or the Transferred Assets arising under or out of, in connection with, or in any way relating to, the Debtor, the Transferred Assets, the operation of the Debtor's business prior to the Closing, or the transfer of the Transferred Assets to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting any Claims or Interests of any kind or nature whatsoever (except to the extent such Claims or Interests are expressly assumed by the Purchaser pursuant to the Purchase Agreement or as set forth in paragraphs 7-8 herein) against the Purchaser and its successors, designees, affiliates, permitted assigns, or property, or the Transferred Assets conveyed in accordance with the Purchase Agreement.

19

15.     The Purchaser (and any assignee of the Purchaser's rights under the Purchase Agreement) and its respective owners, members, shareholders, managers, directors, officers, partners, employees, agents, attorneys, investment bankers and financial advisors are hereby generally released by the Debtor, its Affiliates, their respective estates and their respective owners, members, shareholders, managers, directors, officers, partners, employees, agents, attorneys, investment bankers and financial advisors from any and all claims that the Debtor and its Affiliates or estates or any party claiming derivatively through the Debtor may have against the Purchaser, other than claims against the Purchaser arising under the Purchase Agreement or as otherwise provided in this Sale Order; provided however that such release will not be in effect until the later of the Closing or all obligations under the Purchase Agreement have been fulfilled.

16.     As of and after the Closing:   (a) each of the Debtor's creditors is hereby authorized and directed to execute such documents and take all other actions as may be necessary to release their Claims or Interests in the Transferred Assets (if any) as such Claims or Interests may have been recorded or may otherwise exist; and (b) any Transferred Assets that may be subject to a statutory or mechanic's lien shall be turned over and such liens shall attach to the sale proceeds in the same priority they currently enjoy with respect to the Transferred Assets.

### Contracts to be Assumed and Assigned

17.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the occurrence of the Closing Date, the Debtor's assumption and assignment to the Purchaser, and the Purchaser's assumption on the terms set forth in the Purchase Agreement of the Designated Contracts is hereby approved in its entirety, and the requirements of section 365 of the Bankruptcy Code with respect thereto are hereby deemed satisfied.  With respect to each Designated Contract, attached to this Sale Order as Exhibit B is a chart identifying each such Designated Contract.

20

18.     The Debtor hereby is authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to assume and assign to the Purchaser, effective upon the Closing Date of the sale of the Transferred Assets, the Designated Contracts free and clear of all Interests or Claims of any kind or nature whatsoever and execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Designated Contracts to the Purchaser.

19.     To the extent that an objection by a counterparty to any Designated Contract, including all objections related to Cure Costs, is not resolved prior to the Closing Date, the Debtor, in consultation with the Purchaser, may elect to reserve the disputed Cure Cost and assume the Designated Contract on the Closing Date.  So long as the Debtor holds the claimed Cure Cost in reserve, and there are no other unresolved objections to the assumption and assignment of the applicable Designated Contract, the Debtor can, without further delay, assume and assign the Designated Contract that is the subject of the objection.   Under such circumstances, the respective objecting counterparty's recourse is limited to the funds held in reserve.

20.     Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall fully and irrevocably be vested in all right, title, and interest of each Designated Contract.  To the extent provided in the Purchase Agreement, the Debtor shall cooperate with, and take all actions reasonably requested by, the Purchaser to effectuate the foregoing.

21.     The Designated Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Designated Contract (including those of the type described in

21

sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.

22.      Pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, any and all Cure Costs necessary to assume and assign a Designated Contract or Additional Designated Contract shall be paid by the Debtor.

23.      The Cure Costs to which no objections have been filed are hereby fixed at the amounts set forth in the Cure Notice filed by the Debtor, or as otherwise agreed, in writing and with the consent of the Purchaser, which shall not be unreasonably withheld, between the Debtor and the non-Debtor third parties to such Designated Contracts, and the non-Debtor parties to such Designated Contracts are forever bound by such Cure Costs and, upon payment of such Cure Costs, are hereby enjoined from taking any action against the Purchaser or the Transferred Assets with respect to any claim for cure under any assumed Designated Contract.

24.      The payment of the Cure Costs (if any) shall effect a cure of all defaults existing as of the date that such executory contracts or unexpired leases are assumed and compensate for any actual pecuniary loss to such non-Debtor party resulting from such default.  No other amounts will be owed by the Debtor, its estate or the Purchaser with respect to amounts first arising or accruing during, or attributable or related to, the period before Closing with respect to the Designated Contracts, and any and all persons or entities shall be forever barred and estopped from asserting a claim against the Debtor, its estate, or the Purchaser that any additional amounts are due or defaults exist under the Designated Contracts that arose or accrued, or relate to or are attributable to the period before the Closing.

25.      The assumption by the Debtor and assignment by the Debtor to the Purchaser of the Designated Contracts pursuant to section 365(f) of the Bankruptcy Code shall not be a default thereunder.  After the payment of the relevant Cure Costs by the Debtor, neither the

22

Debtor nor the Purchaser shall have any further liabilities to the counterparties to the Designated Contracts, other than the Purchaser's obligations under the Designated Contracts that accrue and become due and payable on or after the date that such Designated Contracts are assumed.

26.    Any provisions in any Designated Contract that prohibit or condition the assignment of such Designated Contract or allow the party to such assumed Designated Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Designated Contract constitute unenforceable anti-assignment provisions that are void and of no force and effect.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser of the Designated Contracts have been satisfied.

27.    Any party having the right to consent to the assumption or assignment of any Designated Contract that failed to timely object to such assumption or assignment is deemed to have consented to such assumption and assignment as required by section 365(c) of the Bankruptcy Code.

28.    The Purchaser shall be deemed to be substituted for the Debtor as a party to the applicable Designated Contracts and the Debtor shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Designated Contracts.

29.    The Purchaser has provided adequate assurance of future performance under the relevant Designated Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

30.    Tasman East Parcel 56 Owner, LLC ("Tasman") informally responded to the Cure Notice regarding assumption and assignment of a lease for non-residential real estate between Tasman and the Debtor, as identified on the list of Designated Contracts attached to the Cure Notice attached hereto (the "Tasman Lease").  The Debtor and Purchaser agreed to extend the

23

deadline for Tasman to object to assumption and assignment of the Tasman Lease to May 26, 2017 in order to provide the Purchaser time further evaluate the Tasman Lease. Notwithstanding anything in this Sale Order to the contrary, the Tasman Lease shall not be deemed an assumed and assigned Designated Contract pursuant to this Sale Order. In the event Tasman and the Purchaser agree to the assumption and assignment of the Tasman Lease, the Debtor shall promptly seek an order approving the same.

31.    There shall be no assignment fees, increases, rent-acceleration, or any other fees charged to the Purchaser or the Debtor as a result of the assumption and assignment of the Designated Contracts. Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the Designated Contracts are forever barred and permanently enjoined from raising or asserting against the Debtor or the Purchaser, with respect to the assignment of the Designated Contracts to the Purchaser, any assignment fee, default, breach, claim, pecuniary loss, or condition to assignment, that arise under or related to the Designated Contracts, existing as of the date that such Designated Contracts.

32.    All counterparties to the Designated Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, and without any cost or charges, any instruments, applications, consents or other documents that may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale.

33.    Neither the Purchaser, nor any successor of the Purchaser, shall be responsible for or have any Interests or Claims or obligations arising out of any of the contracts, agreements, or understandings that have not been assumed or assigned to the Purchaser (except as specifically provided by the Purchase Agreement).

### Resolution of the Synopsys Objection

24

34.     Pursuant to section 363(b), and because the Debtor's entry into the Synopsys Stipulation is necessary to resolve the Synopsys Objection and a critical component of the Successful Bid, the Backup Bid, the Sale and the Debtor's path to exit this Bankruptcy Case, the Debtor is authorized to enter into the Synopsys Stipulation as more fully set forth in Exhibit A.

35.     The Synopsys Objection is hereby deemed withdrawn and Synopsys shall file a Notice of Withdrawal on the docket in the Bankruptcy Case.

36.     The Synopsys Stipulation is hereby approved and the Debtor is authorized, empowered, and directed, acting by and through its existing agents, representatives and officers, who are authorized, empowered, and directed to take any and all actions necessary or appropriate to:  (a) enter into the Synopsys Stipulation pursuant to and in accordance with this Sale Order, and (b) execute and deliver, perform under, consummate, and implement all additional instruments and documents that may be reasonably necessary or desirable to implement the Synopsys Stipulation, including without limitation signing and filing the Consent Judgment (as defined in the Synopsys Stipulation).

37.     As set forth in the Synopsys Stipulation and pursuant to the terms thereof:

(a)     The Synopsys Backup Bid shall remain open until June 30, 2017.

(b)     Proof of Claim No. 12 filed by Synopsys shall be an allowed general unsecured claim against the Debtor in the amount of $30,400,000.00 (the "Synopsys Allowed Claim").

(c)     The Debtor and Synopsys shall take all necessary and appropriate steps to dismiss and resolve the District Court Litigation (including claims and counterclaims) as set forth in the Stipulation; provided, however, the Permanent Injunction shall enjoin and restrain the Debtor and the Purchaser pursuant to the terms thereof.

NAI-1502702819v12
4839-3161-8888\11

(d)    As provided in paragraph 6 of the Synopsys Stipulation, Synopsys shall

withdraw: (i) the *Objection of Synopsys, Inc. to the Debtor's Key Employee Retention Program*

*and Key Employee Incentive Program Pursuant to Sections 105, 363(b) and 503(c) of the*

*Bankruptcy Code* [D.I. 131] to the extent that the bonuses to be paid pursuant to the proposed

incentive program do not exceed $225,000 and (ii) the *Limited Objection to Professional Fees*

*Limited Objection of Synopsys, Inc. to First Monthly Application of Arnold & Porter Kaye*

*Scholer LLP, Special Litigation Counsel to the Debtor, for the Allowance of Compensation and*

*Reimbursement of Expenses for the Period from January 13, 2017 through February 28, 2017*

[D.I. 215], by filing a Notice of Withdrawal on the docket in the Bankruptcy Case; and

(e)    Upon the closing of the sale contemplated by the Successful Bid or

Backup Bid (as defined below), the Debtor shall withdraw the Debtor's Objection to Proof of

Claim No. 12 filed by Synopsys, Inc. [D.I. 302], by filing a Notice of Withdrawal on the docket

in the Bankruptcy Case.

38.    Upon the closing of the sale contemplated by the Successful Bid or Backup Bid,

the following Release shall become effective: Except as otherwise set forth in the Synopsys

Stipulation, Synopsys and the Debtor (each a "Party" and together, the "Parties") hereby releases

the other Party and such Party's current and past employees, officers, directors, professionals,

and representatives from any and all claims or causes of action, whether known or unknown,

arising prior to the date hereof, including (a) any claims that Synopsys has or may have arising

out of or related to Synopsys' ownership of the Debtor's capital stock; (b) any claims, whether

known or unknown, and for breach of fiduciary duty against the Debtor's board of directors,

regardless of the nature of such claims; and (c) any claims, whether known or unknown, that the

Debtor has or may have arising out of or related to Synopsys' acquisition or ownership of the

Debtor's capital stock. Notwithstanding the foregoing and for the avoidance of doubt, the

26

releases provided pursuant to this paragraph 38 and paragraph 8 of the Synopsys Stipulation shall (w) not release the Synopsys Allowed Claim, (x) not include the release of any claims or causes of action arising following the date hereof; (y) not include or impact Synopsys' status as an equity interest holder in the Debtor and shall not include or impact Synopsys' right to a *pro rata* distribution on account of the equity interests in this Bankruptcy Case, if any; and (z) not include the release of any claims, causes of actions or obligations of any kind or nature whether in law or in equity, held by any of the Parties against Avatar, King Mark or their affiliates, owners, shareholders, members, officers, directors, agents or employees with respect to any obligation, claim or cause of action of any kind, whether or not such claim, cause of action or obligation arises from the Purchase Agreement, the Chapter 11 Case, the Permanent Injunction or otherwise.

39.     The automatic stay imposed by section 362 of the Bankruptcy Code is hereby modified and vacated to the extent necessary to permit the Parties to take any and all actions necessary to implement the Synopsys Stipulation, file in the District Court the Consent Judgment, and to allow the Debtor to file in the District Court the same final executed copies of the declarations (as referenced by paragraph 4 of the Permanent Injunction).

40.     For the avoidance of doubt, to the extent the Debtor and Synopsys propose to file a version of the Consent Judgment that materially differs from the one attached to the Synopsys Stipulation, Avatar shall retain all rights under the Avatar APA, including without limitation its rights under Section 5.5.

## No Successorship

41.     Neither the Purchaser nor any of its affiliates are successors to the Debtor or its estate by reason of any theory of law or equity, and neither the Purchaser nor any of its affiliates

NAI-1502702819v12
4839-3161-8888\11

shall assume or in any way be responsible for any liability or obligation of the Debtor or its estate, except as otherwise provided in the Purchase Agreement and the Permanent Injunction.

### Time is of the Essence

42.    Time is of the essence in consummating the Sale. In order to maximize the value of the Transferred Assets, it is essential that the sale and assignment of the Transferred Assets occur within the time constraints set forth in the Purchase Agreement.

### Modification of the Automatic Stay for the Purchase Agreement

43.    The automatic stay provisions of section 362 of the Bankruptcy Code are lifted and modified to the extent necessary to implement the terms and conditions of the Purchase Agreement and the provisions of this Sale Order.

### Additional Provisions

44.    Effective upon the Closing Date and except as otherwise provided in this Sale Order or the Purchase Agreement, all entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Purchaser, its successors and assigns, or the Transferred Assets, with respect to any: (a) Interests or Claims arising under, out of, in connection with, or in any way relating to the Debtor, the Purchaser, the Transferred Assets, or the operation of the Debtor's business or the Transferred Assets prior to the closing of the Sale; or (b) successor liability (except to the extent the Purchaser specifically assumed successor liability pursuant to the Purchase Agreement), including the following actions:  (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors or assigns, assets, or properties, including with respect to the Interests or Claims; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser, its successors, assigns, assets, or properties;

28

(iii) creating, perfecting, or enforcing any Interests or Claims against the Purchaser, its successors, assigns, assets, or properties; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Purchaser or its successors or assigns; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof, or (vi) revoking, terminating, or failing or refusing to issue or renew any license, permit, or authorization to operate any of the Transferred Assets or conduct any of the businesses operated with the Transferred Assets; provided, however, Synopsys shall be permitted to take any and all actions necessary to enforce the Permanent Injunction.

45.    Except as otherwise expressly provided in the Purchase Agreement, the Purchaser shall have no obligation, as successor or otherwise (including with respect to successor or vicarious liabilities of any kind or character), to pay wages, bonuses, severance pay, benefits (including contributions or payments on account of any under-funding with respect to any and all pension plans) or any other payment to employees of the Debtor or its Affiliates.  Except as otherwise expressly provided in the Purchase Agreement, the Purchaser shall have no liability, as successor or otherwise (including with respect to successor or vicarious liabilities of any kind or character), with respect to any collective bargaining agreement, labor practice agreement, employee pension plan, employee welfare or retention, benefit, and/or incentive plan to which the Debtor or its Affiliates are a party and relating to the Debtor's business (including arising from or related to the rejection or other termination of any such agreement), and the Purchaser shall in no way, as successor or otherwise (including with respect to successor or vicarious liabilities of any kind or character), be deemed a party to or assignee of any such agreement, and no employee of the Purchaser shall be deemed in any way covered by or a party to any such

29

agreement, and all parties to any such agreement are hereby enjoined from asserting against the Purchaser any and all Interests or Claims arising from or relating to such agreement.

46.    Except as expressly provided in the Purchase Agreement and Permanent Injunction, and without limiting other applicable provisions of this Sale Order, the Purchaser is not, by virtue of the consummation of the Sale, assuming, nor shall it be liable or responsible for, as a successor or otherwise (including with respect to successor or vicarious liabilities of any kind or character), under any theory of law or equity, including any theory of antirust, environmental successor or transferee liability, labor law, *de facto* merger, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter raised, which may be asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtor, or any of its predecessors or Affiliates or any obligations of the Debtor or its predecessors or Affiliates arising prior to the Closing Date, for any liabilities, debts, commitments, or obligations (whether known or unknown, disclosed or undisclosed, absolute, contingent, inchoate, fixed or otherwise) in any way whatsoever relating to or arising from the Transferred Assets or the Debtor's operation of its business or use of the Transferred Assets on or prior to the Closing Date or any such liabilities, debts, commitments, or obligations that in any way whatsoever relate to periods on or prior to the Closing Date or are to be observed, paid, discharged, or performed on or prior to the Closing Date (in each case, including any liabilities that result from, relate to or arise out of tort or other product liability claims), or any liabilities calculable by reference to the Debtor or its assets or operations, or relating to continuing conditions existing on or prior to the Closing Date, including with respect to any of Debtor's predecessors or Affiliates, which liabilities, debts, commitments, and obligations are hereby extinguished insofar as they may give rise to successor liability, without regard to whether the claimant asserting any such liabilities, debts, commitments, or obligations has delivered to the

30

Purchaser a release thereof. Without limiting the generality of the foregoing and except as expressly provided in the Purchase Agreement, by virtue of the consummation of the Sale contemplated by the Purchase Agreement, the Purchaser shall not be liable or responsible, as a successor or otherwise, including with respect to successor or vicarious liabilities of any kind or character, for the Debtor's liabilities, debts, commitments, or obligations, whether calculable by reference to the Debtor, arising on or prior to the Closing and under or in connection with: (a) any employment or labor agreements (including any collective bargaining agreements or labor practice agreements), consulting agreements, severance arrangements, change-in-control agreements or other similar agreement to which the Debtor is a party; (b) any pension, welfare, compensation or other employee benefit plans, agreements, practices, and programs, including any pension plan of the Debtor; (c) the cessation of the Debtor's operations, dismissal of employees, or termination (including rejection) of employment or labor agreements (including any collective bargaining agreements or labor practice agreements) or pension, welfare, compensation or other employee benefit plans, agreements, practices, and programs, obligations that might otherwise arise from or pursuant to the Employee Retirement Income Security Act of 1974, as amended, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Consolidated Omnibus Budget Reconciliation Act, or the Worker Adjustment and Retraining Notification Act; (d) workmen's compensation, occupational disease or unemployment or temporary disability insurance claims, (e) environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to Closing (including the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including under the Comprehensive Environmental Response, Compensation and Liability Act,

NAI-1502702819v12
4839-3161-8888\11

42 B.SC. § 9601 *et seq.*; (f) any bulk sales, bulk transfer, or similar law; (g) any liabilities, debts, commitments, or obligations of, or required to be paid by, the Debtor for any Taxes of any kind for any period; (h) any liabilities, debts, commitments, or obligations relating to the business of the Debtor or the Transferred Assets for or applicable to the pre-Closing period; (i) any litigation; (j) any liability, whether pursuant to any state or any federal laws that arise from products manufactured or distributed by or on behalf of Debtor; and (k) any Excluded Liabilities as set forth in the Purchase Agreement. The Purchaser has given substantial consideration under the Purchase Agreement for the benefit of the holders of any Interests or Claims. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Interests or Claims in or against the Debtor or any of the Transferred Assets.

47.    The recitation, in the immediately preceding paragraph of this Sale Order, of specific agreements, plans, or statutes is not intended, and shall not be construed, to limit the generality of the categories of liabilities, debts, commitments, or obligations referred to therein.

48.    Debtor and Purchaser shall not be required to comply with, and shall not be subject to any claims related to non-compliance with, the provisions of any bulk sales, bulk transfer, or similar law of any jurisdiction that may be applicable.

49.    Other than with respect to Synopsys' right to enforce the Permanent Injunction, following the Closing, no holder of a Claim or Interest in or against the Debtor or the Transferred Assets shall interfere with the Purchaser's title to or use and enjoyment of the Transferred Assets based on or related to such Claim or Interest or any actions that the Debtor may take in this Bankruptcy Case or any successor cases.

NAI-1502702819v12
4839-3161-8888\11

50.    The Debtor shall be, and it hereby is, authorized to take all such actions as may be necessary to effectuate the terms of this Sale Order.

51.    The Sale contemplated by the Purchase Agreement is undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Designated Contracts by the Purchaser, if any, and the sale free and clear of all Interests or Claims (unless otherwise expressly assumed in the Purchase Agreement)), unless such authorization and consummation of such Sale are duly stayed pending such appeal. The Purchaser is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

52.    As a good-faith purchaser of the Transferred Assets, the Purchaser has not colluded with any of the other bidders, potential bidders, or any other parties interested in the Transferred Assets, and therefore neither the Debtor nor any successor in interest to the Debtor's estate nor any other party in interest shall be entitled to bring an action against the Purchaser or any if its Affiliates, and the sale of the Transferred Assets may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

53.    Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in this Bankruptcy Case, any subsequent chapter 7 or chapter 11 case of the Debtor, or any related proceeding subsequent to entry of this Sale Order, shall directly conflict with or directly derogate from the provisions of the Purchase Agreement or the terms of this Sale Order.

NAI-1502702819v12
4839-3161-8888\11

54.    The failure specifically to include any particular provisions of the Purchase Agreement including any of the documents, agreements, or instruments executed in connection therewith in this Sale Order shall not diminish or impair the efficacy of such provision, document, agreement, or instrument, it being the intent of this Court that the Purchase Agreement and each document, agreement or instrument be authorized and approved in its entirety.

55.    To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in this Bankruptcy Case, the terms of this Sale Order shall govern.

56.    To the extent there are any inconsistencies between the terms of this Sale Order and the Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Sale Order shall govern, provided that to the extent such an inconsistency constitutes a breach of the Purchase Agreement, that breach shall not be excused by entry of this Sale Order.

57.    The Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court.

58.    The Debtor's representations, warranties, and those covenants required to be performed at or prior to closing of the Sale, that are contained in the Purchase Agreement, or in any certificate or other instrument delivered pursuant to the Purchase Agreement, shall not survive after the closing of the Sale.  The post-Closing covenants of the Debtor shall survive after the Closing in accordance with their terms.

59.    Pursuant to section V.G of the Bidding Procedures, at the Auction, Synopsys was determined to be the Backup Bidder.  As set forth in the Stipulation, Synopsys is hereby required to keep its last bid at the Auction (the "Backup Bid") open and irrevocable until June 30, 2017.

34

If the Purchaser fails to consummate the Sale, Synopsys shall be deemed to be the new

Successful Bidder, and the Debtor shall be authorized to consummate and perform under the

Backup Bid purchase agreement and related documents (including the amendments thereto made

on the record at the Auction).

60.     In the event that the Debtor consummates the transaction contemplated by the

Backup Bid, Synopsys shall benefit in all respects from the factual findings related to the

Purchaser contained in this Sale Order.

61.     The provisions of this Sale Order are nonseverable and mutually dependent.

62.     Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this Sale

Order shall be effective immediately upon entry and the Debtor and the Purchaser are authorized

to close the Sale immediately upon entry of this Sale Order, in accordance with the Purchase

Agreement.

63.     The Debtor is authorized to take all actions necessary to effectuate the relief

granted pursuant to this Sale Order.

64.     This Court shall retain jurisdiction to, among other things, interpret, implement,

and enforce the terms and provisions of this Sale Order and the Purchase Agreement, all

amendments thereto and any waivers and consents thereunder and each of the agreements

executed in connection therewith to which the Debtor is a party or which has been assigned by

the Debtor to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or

relating in any way to Purchase Agreement or the Sale.

Dated: _____, 2017
        Wilmington, Delaware

                              _____
                              THE HONORABLE MARY F. WALRATH
                              UNITED STATES BANKRUPTCY JUDGE

35